# STATE OF MICHIGAN

# COURT OF APPEALS

RUTHIE ALLEN,

        Plaintiff-Appellee,

and

BEAUMONT HEALTH SYSTEM,

        Intervening Plaintiff-Appellee,

v

ALLSTATE INSURANCE COMPANY,

        Defendant-Appellant.

UNPUBLISHED
March 16, 2017

No.  330808
Oakland Circuit Court
LC No.  2014-142268-NF

Before:  RIORDAN, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Defendant, Allstate Insurance Company, appeals as of right the order of judgment entered by the trial court after its earlier denial of defendant's motion for summary disposition, and grant of plaintiff Ruthie Allen's and intervening plaintiff Beaumont Heath System's ("Beaumont") motions for summary disposition, on the issue of liability.  We affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The material facts of this case are not in dispute.  In 2000, plaintiff moved to Louisiana from Michigan with her husband.  In June 2013, plaintiff decided to separate from her husband, who was emotionally abusive.  Accordingly, at that time, she began to make arrangements to move in with her daughter, Tara Hunter, who lived on Shaun Road in West Bloomfield, Michigan.[1]  Plaintiff's "arrangements" included the following: (1) she discussed moving into

---

[1] It is noteworthy in this case that plaintiff clearly confirmed during her deposition and examination under oath that it was her intent, as early as June 2013, to become a permanent Michigan resident.

-1-

Hunter's residence with Hunter before traveling to Michigan in July 2013[2]; (2) plaintiff moved items—including clothing, shoes, small appliances, china, glassware, pots and pans, kitchen utensils, home movies, photo albums, and other possessions that she did not want to leave behind in Louisiana—into a bedroom designated for her use in Hunter's house when she traveled to Michigan in July 2013; (3) she changed her address with her bank, credit card companies, cell phone company, and the federal government for her Social Security Disability benefits; (4) she either changed the address on her DTE utility bill to the Shaun Road address, or opened a DTE account in her name under the Shaun Road address[3]; (5) she ordered new checks that listed the Shaun Road address; and (6) she ordered winter-related items and had them delivered to the Shaun Road address so that she would not have to transport them during her final trip from Louisiana to Michigan. Between June 2013 and September 2013, she also told several friends and family members that she intended to permanently move to Michigan. However, plaintiff did not change her driver's license when she was in Michigan in July 2013 because her "thought process was [she] was going to change it when [she] was here for good," and "[she] knew in July [that she] was going to have to go back to Louisiana for a time."

Plaintiff originally intended to return to Michigan in August 2013 after she went back to Louisiana in July 2013. However, she discovered that she needed to undergo a liver biopsy. As a result, she stayed in Louisiana until September 2013 for that procedure and related follow-up appointments. In September 2013, plaintiff purchased a one-way ticket to Michigan on a Greyhound bus.

On September 12, 2013, plaintiff boarded the bus with her purse and three or four suitcases full of additional possessions, intending to travel to Michigan and "[t]o move in with [her] daughter . . . ." Plaintiff never told her husband that she was moving to Michigan, and she left for the bus station while he was away from the home that they shared in Louisiana. At her deposition, she confirmed that the purpose of the trip was to permanently move to Michigan, and that she had no intention of returning to Louisiana to live or to collect anymore of her personal possessions. Rather, "[a]nything [she] left was left."

On September 14, 2013, the bus on which plaintiff was riding drove off the side of I-75 North near Cincinnati, Ohio, struck a fence and tree, and came to rest on its side. Plaintiff sustained significant injuries as a result of the accident. She was airlifted by helicopter from the accident scene to a medical center in Cincinnati, Ohio. She remained at that hospital for a week

---

[2] Plaintiff testified that she came to Michigan in July 2013 with her husband for approximately one week. She said the purpose of the trip was "[her husband's] daughter's birthday." During the trip, plaintiff stayed with Hunter at the Shaun Road address, and her husband stayed with his children. She testified that her and her husband routinely stayed in separate locations when they visited Michigan because "[t]hat was our relationship."

[3] She seemed to explain at her examination under oath that she initiated a DTE account in her name at the Shaun Road address "as of July 2013." She testified that "everything that I had that had to have mail come to me I had the address changed to Shaun Road" "either in July or August of [2013]."

before being airlifted once again to Beaumont Hospital in Royal Oak, Michigan, where she remained until November 2013. In November, she spent approximately one week in a rehabilitation center, but then returned to Beaumont Hospital after she went into a coma. She was discharged from Beaumont on December 20, 2013, at which time she moved into the home of her son, Anthony Muhammad, in West Bloomfield, Michigan. Plaintiff did not move into Hunter's home when she was discharged from the hospital because Hunter's landlord would not permit modifications to the house that were required for plaintiff's care (*i.e.*, alterations necessary for wheelchair access and a hospital bed).

At the time of the accident, Hunter held a no-fault insurance policy issued by defendant. The policy provided personal protection insurance ("PIP") coverage to individuals who qualified as the policy holder's "resident relative."

In August 2014, plaintiff filed a complaint against defendant. She alleged that (1) on September 14, 2013, she was injured in rollover accident that occurred while she was occupying a Greyhound bus that was "traveling interstate"; (2) when the accident occurred, she was covered by the no-fault insurance policy that defendant issued to Hunter, plaintiff's "resident relative"; (3) defendant was liable to pay plaintiff certain benefits under the policy; and (4) defendant had unreasonably neglected, failed, or refused to pay those benefits, despite receiving reasonable proof of the expenses. Accordingly, plaintiff requested a judgment against defendant. Later, Beaumont intervened as a plaintiff and also filed a complaint against defendant, alleging that defendant was liable for the medical expenses that Beaumont had incurred when it treated plaintiff after the accident because defendant is the highest priority automobile insurer under the no-fault act, MCL 500.3101 *et seq*. In response, defendant denied that it was liable for any benefits to plaintiff under Hunter's insurance policy.

Subsequently, the parties filed cross-motions for summary disposition under MCR 2.116(C)(10), concurring that there were no genuine issues of material fact. Based on the undisputed facts, the trial court was left with determining plaintiff's domicile at the time of the accident, and defendant's liability, as a matter of law. In their motions and responses, the parties disputed, *inter alia*, the correct standards for determining whether plaintiff was domiciled with Hunter—and, therefore, covered by Hunter's insurance policy through defendant—at the time of the accident and the correct application of the law to the undisputed facts. Plaintiff also contended that defendant had waived any affirmative defense regarding her residency or domicile by failing to plead it in its answer.

After holding a hearing on the parties' motions, the trial court granted plaintiff's and Beaumont's motions for summary disposition and denied defendant's motion. The trial court first rejected plaintiff's claim "that 'lack of residency' is an affirmative defense which must be pled or it is waived pursuant to MCR 2.111(E)." Next, the trial court rejected defendant's arguments regarding the standards that govern the determination of an adult's domicile for purposes of the no-fault act. Instead, it adopted the law advocated by plaintiff and Beaumont and ultimately concluded:

> It is undisputed that in June or July 2013 Plaintiff visited her daughter Hunter in Michigan and left some items at Hunter's home including small appliances, china, glassware, utensils, movies and photo albums. Plaintiff also

testified she maintained a room at Hunter's home. It is further undisputed that Plaintiff bought a one-way bus ticket from Louisiana to Michigan in September 2013 for the date of travel the accident occurred, changed her address on some bills and banking, and intended to move-in with Hunter. Similar to the facts in [*Williams v State Farm Mut Auto Ins Co*, 202 Mich App 491; 509 NW2d 821 (1993)], Plaintiff had abandoned her domicile in Louisiana to acquire domicile in Michigan at the time she was involved in the accident.

For these reasons and those further stated by Plaintiff, the Court finds that Plaintiff's domicile at the time of the accident was in Michigan and coverage applies pursuant to the policy and No-Fault Act. Defendant's motion for summary disposition is denied, Plaintiff's motion is granted as well as Beaumont Health System's motion.

Subsequently, the trial court entered an "order of judgment," stating that the parties had come to an agreement on the issue of damages and ordering monetary judgments in favor of plaintiff and Beaumont. It also entered an order staying execution of the judgment pending appeal.

## II. STANDARD OF REVIEW

This Court reviews *de novo* a trial court's grant or denial of summary disposition. *Moraccini v Sterling Hts*, 296 Mich App 387, 391; 822 NW2d 799 (2012). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Cannon Twp v Rockford Pub Sch*, 311 Mich App 403, 411; 875 NW2d 242 (2015). When reviewing such a motion, this Court may only consider, in the light most favorable to the party opposing the motion, the evidence that was before the trial court, which consists of "the 'affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties.' " *Calhoun Co v Blue Cross Blue Shield Michigan*, 297 Mich App 1, 11; 824 NW2d 202 (2012), quoting MCR 2.116(G)(5). Under MCR 2.116(C)(10), "[s]ummary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

Generally, the determination of domicile is a question of fact, but when "the underlying facts are not in dispute, domicile is a question of law for the court." *Fowler v Auto Club Ins Ass'n*, 254 Mich App 362, 364; 656 NW2d 856 (2002).

## III. ANALYSIS

Defendant contends that the trial court misapplied the governing common law principles of domicile and, therefore, erroneously concluded that plaintiff was domiciled with Hunter and covered under the insurance policy issued by defendant at the time of the accident. We disagree.

"[A] personal protection insurance policy . . . applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either *domiciled in the same*

-4-

*household,* if the injury arises from a motor vehicle accident." MCL 500.3114(1) (emphasis added). Likewise, "[p]ersonal protection insurance benefits are payable for accidental bodily injury suffered in an accident occurring out of this state, if the accident occurs within the United States . . . , and the person whose injury is the basis of the claim was at the time of the accident a named insured under a personal protection insurance policy, his spouse, [or] a relative of either *domiciled in the same household . . . .*" MCL 500.3111 (emphasis added). It is undisputed that plaintiff sought benefits under Hunter's policy as a resident relative, not as a named insured.[4] Thus, the sole issue in this case is whether plaintiff was domiciled in Hunter's home at the time of the accident, such that she was entitled to PIP benefits under Hunter's insurance policy.

The no-fault act does not define the term "domiciled," but the word "domicile" "has a precise, technical meaning in Michigan's common law, and thus must be understood according to that particular meaning." *Grange Ins Co of Michigan v Lawrence*, 494 Mich 475, 492-493; 835 NW2d 363 (2013). This common law meaning of "domicile" is as follows: (1) "the place where a person has his true, fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning," or (2) the "place where a person has voluntarily fixed his abode not for a mere special or temporary purpose, but with a present intention of making it his home, either permanently or for an indefinite or unlimited length of time." *Id.* at 493 (quotation marks and citations omitted). "[O]ur common law has recognized that from the time of a person's birth—from childhood through adulthood—a person can only have a single domicile at any given point in time," but an individual may have more than one residence at a given time. *Id.* at 494.

> For purposes of distinguishing "domicile" from "residence," this Court has explained that "domicile is acquired by the combination of residence and the intention to reside in a given place. . . . If the intention of permanently residing in a place exists, a residence in pursuance of that intention, however short, will establish a domicile." The traditional common-law inquiry into a person's "domicile," then, is generally a question of intent, but also considers all the facts and circumstances taken together. [*Id.* at 494-495 (citation omitted).]

Accordingly, "[a]ll relevant factors must be considered in ascertaining domicile." *Dairyland Ins Co v Auto Owners Ins Co*, 123 Mich App 675, 681; 333 NW2d 322 (1983).

"The *Workman-Dairyland* multifactored framework comprises the one now commonly employed by Michigan courts when a question of fact exists as to where a person is domiciled." *Grange*, 494 Mich at 497 n 1; see also *id.* at 497, 501. In *Workman v Detroit Auto Inter–Ins*

---

[4] Hunter's insurance policy provided PIP coverage to individuals who qualified as the policy holder's "resident relative." "Relative" is defined under the policy as "a person related by blood, marriage, or adoption." "Resident" is defined, in relevant part, as "a person who physically resides in the household of the policy holder named on the Policy Declaration with the intention to continue living there." The parties do not dispute that Hunter's insurance policy provided coverage consistent with that required by law under MCL 500.3111 and MCL 500.3114(1).

*Exch*, 404 Mich 477, 496-497; 274 NW2d 373 (1979), the Michigan Supreme Court set forth the following nonexclusive factors for courts to consider in determining an individual's domicile:

> (1) the subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the place he contends is his "domicile" or "household"; (2) the formality or informality of the relationship between the person and the members of the household; (3) whether the place where the person lives is in the same house, within the same curtilage or upon the same premises; (4) the existence of another place of lodging by the person alleging "residence" or "domicile" in the household. [*Workman*, 404 Mich at 496-497 (citations omitted).]

The following factors are also relevant in ascertaining an individual's domicile:

> (1) the person's mailing address; (2) whether the person maintains possessions at the insured's home; (3) whether the insured's address appears on the person's driver's license and other documents; (4) whether a bedroom is maintained for the person at the insured's home; and (5) whether the person is dependent upon the insured for financial support or assistance. [*Williams v State Farm Mut Auto Ins Co*, 202 Mich App 491, 494-495; 509 NW2d 821 (1993), citing *Dobson v Maki*, 184 Mich App 244, 252; 457 NW2d 132 (1990), and *Dairyland*, 123 Mich App at 682.]

See also *Grange*, 494 Mich at 497, 497 n 41. The applicable "factors should be weighed or balanced with each other because no one factor is determinative." *Fowler*, 254 Mich App at 364; see also *Grange*, 494 Mich at 497.

In *Williams*, this Court applied the *Workman-Dairyland* factors to facts strikingly similar to this case. The plaintiff in that case moved from Michigan to Nevada in 1984, acquiring an apartment and job in the area, obtaining a Nevada driver's license and car insurance, and opening an account at a nearby bank. *Williams*, 202 Mich App at 492. Later, the following events occurred:

> On December 31, 1987, plaintiff informed his parents that he was moving back to Michigan. Plaintiff quit his job, closed his bank account in Nevada and opened another one in Michigan, relinquished his apartment, forwarded his mail to his parents' address in Michigan, and loaded his personal belongings in his truck. On March 8, 1988, plaintiff left Nevada to move to Michigan.

> On the way to Michigan, plaintiff was injured in an automobile accident in Oklahoma on March 11, 1988. At the time of the accident, plaintiff had Nevada car insurance and Nevada license plates. Plaintiff also had personal belongings in his bedroom at his parents' house in Grant, Michigan, that he had left before moving to Nevada. After plaintiff arrived in Michigan, he moved into his parents' home rent-free for four months. [*Id*. at 492-493.]

The trial court concluded that the plaintiff was domiciled with his parents in Michigan when the accident occurred and granted summary disposition in favor of the plaintiff. *Id*. at 493-495. The

*Williams* majority agreed, concluding, based on its application of the *Workman-Dairyland* factors, that "it is overwhelmingly clear that plaintiff was domiciled in his parents' household." *Id*. at 494-495.[5]

The dissenting opinion disagreed. *Id*. at 495-496 (SHEPHERD, J., dissenting). It focused on common law principles governing domicile, including that two elements are generally required to establish domicile (intent and physical presence), and that an "old domicile is not relinquished until the person is physically present at the intended new location." *Id*. at 496. Accordingly, the dissent concluded, without any consideration of the *Workman-Dairyland* factors, that the plaintiff was not domiciled in his parents' residence, and was not entitled to PIP benefits under their no-fault insurance policy, because the "plaintiff, at the time of injury, had not yet arrived at his parents' home in Michigan." *Id*. at 498.

In this case, defendant contests the ongoing viability of the *Workman-Dairyland* factors after the Michigan Supreme Court's emphasis on the traditional common law principles of domicile in *Grange*. Likewise, it argues that the majority opinion in *Williams* is no longer binding precedent given the majority's reliance on the *Workman-Dairyland* factors, and that the *Williams* dissent should be followed in this case given its exclusive focus on common law principles. Contrary to defendant's characterization of the opinion, *Grange* did not invalidate the *Workman-Dairyland* factors, or otherwise undermine the majority opinion in *Williams*.

As defendant emphasizes, the trial court and this Court, which were reversed in *Grange*, applied the *Workman-Dairyland* factors (1) to conclude that a child at issue in that case had two domiciles, one with each parent, when the accident occurred, and, therefore, (2) to require the father's insurance company to reimburse the mother's insurance company for 50% of the PIP benefits and processing expenses that the mother's insurance company had paid for the child. *Grange*, 494 Mich at 484-485. However, defendant fails to recognize that the Michigan Supreme Court actually declared that a consideration of the surrounding factual circumstances— accomplished though a consideration of the *Workman-Dairyland* factors—is not appropriate in cases where an individual's domicile is established *as a matter of law*, as in the case of a child.[6] It did not generally hold that consideration of the *Workman-Dairyland* factors is not appropriate in determining an adult's domicile. To the contrary, the Michigan Supreme Court made it clear throughout *Grange* that the *Workman-Dairyland* factors remain relevant and applicable in

---

[5] However, this Court found that the trial court improperly attributed " 'special weight' to [the] plaintiff's intent to be domiciled in Michigan." *Williams*, 202 Mich App at 493-495.

[6] See *id*. at 511 ("Where a court order sets a child's custody or domicile by operation of law, the factual circumstances or the parents' or child's intentions are irrelevant to the domicile determination."); *id*. at 511 n 74 ("A domicile set by operation of law—for example, by court order—obviates the need to engage in an analysis of the *Workman-Dairyland* factors, which were designed to help determine a person's domicile when it was an open or contested question."); *id*. at 514 ("[T]he lower courts . . . erred by applying the *Workman* factors that are inapplicable to a person whose domicile is set by operation of law.").

determining the domicile of an adult whose domicile is *not* set by operation of law.[7]

Furthermore, the Court did not generally reject the *Workman* opinion or analysis. It only rejected *Workman* to the extent that courts have erroneously understood and applied the case. See *Grange*, 494 Mich at 500-501. It is also noteworthy that the *Grange* Court clearly established, at multiple points in its opinion, the limited issues before it and its circumscribed holdings, neither of which are directly applicable to the issue in this appeal. *Grange*, 494 Mich at 481, 492. Likewise, it is clear from its explanation of the principles applicable the determination of a child's domicile that its discussion and reliance on the common law rules, exclusive of the *Workman-Dairyland* factors, was strictly due to the fact that the domicile issues in *Grange* involved domiciles that were acquired by operation of law, as opposed to domiciles acquired by origin/nativity or by choice. See *id*. at 501-503.[8]

Accordingly, there is absolutely no indication in *Grange*—especially in light of its clear references to the fact that the *Workman-Dairyland* factors remain relevant and applicable in cases involving an adult whose domicile is not set by operation of law—that the majority opinion in *Williams* has been overruled or disavowed. Therefore, we reject defendant's reliance on *Grange* to contend that the majority opinion in *Williams*, 202 Mich App 491, is no longer valid, and to contend that this Court should apply common law domicile principles without considering the *Workman-Dairyland* factors. Contrary to defendant's claims, this Court must consider the *Workman-Dairyland* factors in determining plaintiff's domicile at the time of the accident and follow *Williams* as binding precedent. MCR 7.215(C)(2), (J)(1).

Consistent with *Williams*, the trial court properly concluded, based on the *Workman-Dairyland* factors, that plaintiff's domicile was in Michigan with Hunter rather than in Louisiana

---

[7] See *id*. at 497 ("In *Workman, the seminal case in which we interpreted the phrase 'domiciled in the same household' as used in MCL 500.3114(1)*, we considered whether the claimant, the insured's adult daughter-in-law, was domiciled in the same household as the insured. After noting that no caselaw interpreted the phrase, 'domiciled in the same household,' we articulated a flexible multi-factor test to aid courts in determining domicile, in which no one factor is determinative.") (emphasis added); *id*. at 497 n 41 ("The *Workman–Dairyland* multifactored framework comprises the one now commonly employed by Michigan courts when a question of fact exists as to where a person is domiciled."); *id*. at 501 ("Workman *and its progeny applying the traditional domicile test defined domicile in relation to an adult* but, for reasons that we will explain, these factors are not helpful in determining a child's domicile.") (emphasis added); *id*. at 502 ("Typically, as indicated in the preceding discussion and demonstrated by the *Workman* factors, an adult acquires a new domicile by choosing one of his or her choice, which makes the question of intent a preeminent concern in determining an adult's domicile."); *id*. at 511 n 74.

[8] Notably, the *Grange* Court stated, "Thus, *while intent is critical for determining the domicile of an adult*, a child's intent regarding domicile is simply irrelevant, and *the traditional factors applied in determining an adult's domicile* are likewise irrelevant. Instead, the child's domicile is determined by reference to the domicile of his or her parents." *Grange*, 494 Mich at 503 (emphasis added).

-8-

with her husband when the accident occurred. The first *Workman* factor weighs in favor of a finding that plaintiff was domiciled in Hunter's residence, as there is no dispute that plaintiff's declared intent, at the time of the accident, was to return to Hunter's home as her domicile, just as the plaintiff in *Williams* clearly informed his parents that he was moving back to Michigan from Nevada. See *Workman*, 404 Mich at 496-497; *Williams*, 202 Mich App at 492. The record confirms that plaintiff subjectively intended to leave her husband and live with Hunter in Michigan, that she expressed this intent to several friends and family members between June 2013 and September 2013, and that she continued to possess this intent when she boarded the bus in September 2013. The second *Workman* factor also weighs in favor of a finding that plaintiff was domiciled with Hunter. Like the plaintiff in *Williams*, who had made arrangements with his parents to move into their home upon his arrival in Michigan, the deposition testimony clearly shows that plaintiff had a close relationship with Hunter and had made formal arrangements to live in Hunter's home, which included, *inter alia*, either opening a DTE account in plaintiff's name at the Shaun Road address, or transferring her account to that address. See *Workman*, 404 Mich at 496-497; *Williams*, 202 Mich App at 492. The third *Workman* factor is unclear, as plaintiff had established a bedroom in Hunter's residence, but was traveling to Michigan from her previous home in Louisiana with the last set of possessions that she intended to move from Louisiana to Michigan when the accident occurred. Arguably, though, plaintiff established a residence inside Hunter's home when she was physically present and moved possessions into her bedroom at Hunter's residence, intending to reside there permanently, in July 2013. See *Workman*, 404 Mich at 496-497.

However, the fourth *Workman* factor plainly weighs in favor of a finding that plaintiff was domiciled in Hunter's home. See *id*. Several facts show that plaintiff had abandoned her domicile in Louisiana and considered Hunter's address her home address at the time of the accident. Similar to the plaintiff in *Williams*, who had relinquished his apartment in Nevada, forwarded his mail to his parent's address, and packed his personal belongings in his truck, *Williams*, 202 Mich App at 492, plaintiff changed her mailing address with her bank, credit card companies, and the federal government for her Social Security Disability payments; moved many personal possessions to Hunter's residence in July 2013; packed any remaining possessions that she intended to keep into her suitcases before boarding the Greyhound bus; and left her residence in Louisiana without telling her husband. Additionally, one may reasonably infer that plaintiff provided Hunter's address to police after the accident, as it is included as plaintiff's address in the traffic crash report and witness statement, which further demonstrates that plaintiff considered Hunter's residence her home and had abandoned her Louisiana domicile at the time of the accident. Therefore, at least three out of the four *Workman* factors weigh in favor of a finding that plaintiff was domiciled with Hunter when the accident occurred.

Most of the *Dairyland* factors also weigh in favor of a finding that plaintiff was domiciled with Hunter. Under the first factor, plaintiff had changed her mailing address to Hunter's address with several entities, including the federal government, before boarding the Greyhound bus, just as the plaintiff in *Williams* had arranged for his mail to be forwarded to his parents' address. See *Williams*, 202 Mich App at 492, 494. Under the second factor, plaintiff had moved clothing, shoes, and kitchen items to Hunter's residence and had ordered and shipped winter clothing to Hunter's residence. See *id*. at 494. Notably, this shows a current maintenance of personal possessions for daily living at Hunter's residence, which is more significant than the plaintiff's maintenance of personal possessions in his bedroom at his parents' house, which he

had left there when he moved to Nevada.  See *id*. at 493.  The third factor may appear to weigh against a finding that plaintiff was domiciled with Hunter, as Hunter's address was not listed on plaintiff's driver's license.  See *id*. at 494-495.  However, the plaintiff in *Williams* had Nevada car insurance and Nevada license plates when the accident occurred.  *Id*. at 493.  Further, it is noteworthy that plaintiff had not changed the address on her Louisiana driver's license to her last address in that state.  Rather, at the time of her examination under oath, the address on her driver's license was her second-to-last address in Louisiana.  Accordingly, this factor does not appear to undermine a finding that plaintiff was domiciled in Hunter's residence.  The fourth *Dairyland* factor weighs in favor of a finding of domicile, as the unrebutted testimony clearly established that plaintiff had a designated bedroom in Hunter's home.  See *id*. at 495.  However, the fifth factor weighs against a finding that plaintiff was domiciled with Hunter, as there is no evidence that plaintiff was dependent on Hunter for financial support or assistance.  See *id*.

Consistent with this Court's decision in *Williams*, applying the *Workman-Dairyland* factors to the undisputed facts in this case shows, as a matter of law, that plaintiff had established her domicile in Hunter's home—and abandoned her domicile in Louisiana—at the time of the accident.  See *Fowler*, 254 Mich App at 364; *Williams*, 202 Mich App at 494-495.  As a result, the trial court properly concluded that there is no genuine issue of material fact as to whether plaintiff was covered as a resident relative under Hunter's insurance policy, see MCL 500.3111; MCL 500.3114(1); *Allison*, 481 Mich at 425, such that plaintiff and Beaumont were entitled to judgment as a matter of law on the issue of liability.  See *Latham*, 480 Mich at 111.[9]

## IV.  CONCLUSION

The trial court's grant of summary disposition in favor of plaintiff and Beaumont was proper because there is no genuine issue of material fact that plaintiff was domiciled in the same household as Hunter when the accident occurred.

Affirmed.

/s/ Michael J. Riordan
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood

---

[9] Given this conclusion, it is unnecessary to consider plaintiff's alternative argument on appeal.