*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

IKHLAS ZAIYA,

       Plaintiff-Appellant,

v

ENCOMPASS INDEMNITY COMPANY,

       Defendant-Appellee,

and

LIBERTY MUTUAL INSURANCE COMPANY,

       Defendant.

UNPUBLISHED
March 25, 2021

Nos. 350733
Wayne Circuit Court
LC No. 18-010841-NF

IKHLAS ZAIYA,

       Plaintiff-Appellant,

v

ENCOMPASS INDEMNITY COMPANY,

       Defendant-Appellee

No. 353157
Wayne Circuit Court
LC No. 19-012490-NF

Before: O'BRIEN, P.J., and SERVITTO and GLEICHER, JJ.

PER CURIAM.

Ikhlas Zaiya was injured in a motor vehicle accident. Zaiya does not have a no-fault insurance policy of her own and sought coverage under two separate policies issued to her daughters. In one lawsuit, the circuit court summarily determined that Zaiya was domiciled with her daughter Rita Yacoub and therefore was covered by Rita's no-fault policy issued by Liberty Mutual Insurance Company. In a second suit, the circuit court determined that Zaiya was not a

-1-

named policyholder under Renee Yacoub's policy through Encompass Indemnity and therefore her domicile with Rita continued to control coverage.

The circuit court erred in determining Zaiya's domicile as a matter of law this case. Zaiya presented evidence that she resided in two separate households at the time of her accident and factual questions remained regarding which residence was her "domicile." Accordingly, we vacate the summary disposition order in Docket No. 350733 in full and in Docket No. 353157 in part. However, the court properly determined in Docket No. 353157 that Zaiya was not a named insured under Renee's policy and we affirm that portion of the order.

## I. BACKGROUND

Ikhlas Zaiya was injured in a motor vehicle accident on November 23, 2016. Zaiya was driving a vehicle owned by her daughter, Renee Yacoub. Renee insured the vehicle through Encompass Indemnity Company. At the time of the accident, Zaiya did not have a vehicle or insurance policy of her own. She also did not own a home. Instead, she split her days between the homes of her daughters, Renee and Rita Yacoub. Rita's vehicles were insured through Liberty Mutual Insurance Company.

Following her accident, Zaiya sought first-party personal protection insurance (PIP) benefits from both Encompass and Liberty Mutual. Neither paid her claims. This led to a series of lawsuits.

Zaiya first filed suit in Macomb Circuit Court on February 13, 2017 against William Wagner (the other party involved in the motor vehicle accident). She later added Encompass and Liberty Mutual as named defendants. It is unclear on this record what occurred during that proceeding or how it resolved. However, Zaiya was twice deposed about issues relevant to the current appeal. Zaiya also filed suit on April 7, 2017, in Wayne Circuit Court against Wagner, and again later added Liberty Mutual and Encompass as named defendants. We again do not know what occurred during that proceeding or how it resolved, but we know that Zaiya was deposed twice more. Zaiya has not appealed either of those matters.

Zaiya again filed suit against both insurers on August 28, 2018, this time in Wayne Circuit Court (Case A). At some point, Zaiya reached a settlement with Liberty Mutual and agreed to its dismissal from the case. After a hard-fought battle and extensive discovery, during which Zaiya was deposed a fifth time, the court granted summary disposition in Encompass's favor. On the eve of the court's decision, Zaiya contended that she was a named insured under Renee's Encompass policy. The court did not resolve that issue as the insurers had no opportunity to brief it. Instead, the court determined as a matter of law that Zaiya's domicile was with Rita. Liberty Mutual was therefore the insurer of top priority. This judgment underlies Zaiya's appeal in Docket No. 350733.

While Case A was pending, Zaiya filed a lawsuit in Oakland Circuit Court against Wagner, Liberty Mutual, and Encompass. Zaiya sought uninsured/underinsured motorist coverage from Liberty Mutual and Encompass in that action. We do not know how this case resolved, either, and Zaiya has not appealed in that matter.

Five days after the Wayne Circuit Court summarily dismissed Case A, Zaiya filed a new lawsuit against Encompass (Case B). This time, Zaiya argued that she was an insured party under Renee's Encompass policy and therefore her domicile was irrelevant to determining coverage. The court summarily dismissed Case B as well. The court determined that Zaiya was an authorized driver, but not an "insured" under the Encompass policy. Accordingly, Zaiya's domicile continued to control the coverage dispute, and that dispute had already been resolved. This judgment underlies the appeal in Docket No. 353157.

As noted, Zaiya appealed in both Case A and Case B. This Court consolidated the matters on appeal. *Zaiya v Encompass Indemnity Co*, unpublished order of the Court of Appeals, entered May 27, 2020 (Docket Nos. 350733 and 353157).

## II. DOMICILE

There remain factual questions regarding Zaiya's domicile and the circuit court should not have summarily dismissed Zaiya's claims against Encompass in Case A. We review de novo summary disposition rulings. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013).

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999) (quotation marks and citations omitted).]

"A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

MCL 500.3114(1) provides that "a personal protection insurance policy . . . applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident." "Domiciled" is not defined in the no-fault act. *Grange Ins Co v Lawrence*, 494 Mich 475, 492; 835 NW2d 363 (2013).

> For over 165 years, Michigan courts have defined "domicile" to mean the place where a person has his true, fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning. Similarly, a person's domicile has been defined to be that place where a person has voluntarily fixed his abode not for a mere special or temporary purpose, but with a present intention of making it his home, either permanently or for an indefinite or unlimited length of time. [*Id*. at 493 (quotation marks and citations omitted).]

Given the nature of a "domicile," a person can have only one at a time. *Id*. at 493-494.

"Generally, the determination of domicile is a question of fact." *Fowler v Airborne Freight Corp*, 254 Mich App 362, 364; 656 NW2d 856 (2002). Only where "the underlying facts are not in dispute," does domicile become "a question of law for the court." *Id*. In considering the existence of a factual question regarding an individual's domicile, and in ultimately resolving that contest, courts apply the multifactor tests articulated in *Workman v Detroit Auto Inter-Ins Exch*, 404 Mich 477, 496-497; 274 NW2d 373 (1979), and *Dairyland Ins Co v Auto-Owners Ins Co*, 123 Mich App 675, 682; 333 NW2d 322 (1983). The *Workman* factors are:

> (1) the subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the place he contends is his "domicile" or "household"; (2) the formality or informality of the relationship between the person and the members of the household; (3) whether the place where the person lives is in the same house, within the same curtilage or upon the same premises; (4) the existence of another place of lodging by the person alleging "residence" or "domicile" in the household[.] [*Workman*, 404 Mich at 496-497 (citations omitted).]

In *Dairyland*, 123 Mich App at 681-682, this Court reviewed the *Workman* factors and added the following:

> (1) the person's mailing address; (2) whether the person maintains possessions at the insured's home; (3) whether the insured's address appears on the person's driver's license and other documents; (4) whether a bedroom is maintained for the person at the insured's home; and (5) whether the person is dependent upon the insured for financial support or assistance. [*Id*. at 497 n 41, quoting *Dairyland*, 123 Mich App at 682.]

"In considering these factors, no one factor is, in itself, determinative; instead, each factor must be balanced and weighed with the others." *Workman*, 404 Mich at 496.

Evidence of Zaiya's domicile comes from her five depositions, the depositions of her daughters, her driver's license applications, and other documents identifying Zaiya and her address. We highlight that Zaiya was deposed a total of five times. She moved to the United States from Iraq as an adult in 1982 and was assisted by an interpreter during her interviews.

The first *Workman* factor provides little insight into determining Zaiya's one fixed domicile. Zaiya repeatedly testified at her depositions, and her daughters corroborated, that Zaiya intended to split her time nearly evenly between the homes of her two daughters. At the time of the accident, Zaiya had no declared intent to make one house her domicile or even her primary residence. Only after her accident did Zaiya determine to remain at Renee's house fulltime. This was because her bedroom at Rita's home was on the second floor and Zaiya could no longer navigate the stairs. The accident was a trigger for Zaiya to declare her domicile at Renee's home.

As to "the formality or informality of the relationship between the person and the members of the household," Zaiya was the "mom" in Renee's home. Renee and her unmarried brother lived in the home and Zaiya acted as a caretaker. Rita was the mother in her home, however. Zaiya

stayed in Rita's home because her two adult grandchildren enjoyed her presence. In both residences, Zaiya enjoyed an informal, familial relationship with the other household members.

Relevant to the third *Workman* factor, Zaiya lived within the house on both Renee's and Rita's properties. She did not live in a separate apartment or building elsewhere on the property.

The fourth *Workman* factor considers "the existence of another place of lodging by the person alleging 'residence' or 'domicile' in the household." Here, Zaiya claimed that Encompass and Liberty had equal duties to provide coverage because Zaiya lived in two residences. There were two "place[s] of lodging," one with Rita and one with Renee. Accordingly, both insurers could use this factor to their advantage in arguing against coverage.

Ultimately, the *Workman* factors are less than helpful. These factors establish that Zaiya actually lived in two separate homes, favoring neither as her "domicile." But this is not legally permitted for PIP coverage purposes.

The *Dairyman* factors are more helpful, but they too leave factual issues to be resolved at trial. First, Zaiya used both Rita's and Renee's addresses as her mailing address. Zaiya received mail at both addresses. Zaiya asserted that she received a majority of her mail at Rita's home, and Rita testified that family members tended to send invitations to Zaiya at Rita's home. In particular, Zaiya's credit cards, bank statements, and doctor bills were mailed to Rita's home. Bills in Zaiya's name connected to Renee's home were received at Renee's address.

Relevant to the second and fourth *Dairyman* factors, Zaiya had a bedroom and maintained possessions at both houses. Zaiya kept clothing, toiletries, and other personal belongings in her bedrooms at both homes. Further questions could be asked to more deeply develop the evidence underlying these factors. In this regard we find instructive *Grange Ins Co*, 494 Mich at 481, a consolidated appeal involving the domicile of injured minors whose parents shared joint legal and physical custody. When faced with evidence of a nearly equal custody arrangement, Justice ZAHRA suggested in his concurrence that courts could pose additional questions, such as "where the majority of the child's belongings are kept." *Id*. at 518 n 4 (ZAHRA, J., concurring). A similar line of inquiry could be broached in this case to direct the factual resolution of Zaiya's domicile.

The remaining two *Dairyman* factors also are not conclusive. There is evidence that Rita's address is listed on Zaiya's passport and current driver's license. However, Zaiya had also listed Renee's address on her driver's license in the past. The accident report listed Rita's address as Zaiya's home, because that was the address on her driver's license. Zaiya used Rita's address when she applied for Social Security benefits. She also listed Rita's address when she applied for PIP benefits and on medical releases and medical records since the accident. This may have been done again as Rita's address was listed on Zaiya's most recent driver's license and that address was connected to the accident report. But these documents establish that Zaiya continued to sometimes list Rita's address as her own even though she then lived fulltime with Renee. Moreover, as Zaiya required an interpreter to navigate her depositions, she may have required a daughter's assistance in filling out driver's license applications, Social Security forms, and insurance forms over the years. Rita's address may have been included not because Zaiya intended Rita's home to serve as her domicile, but because Rita was assisting her mother at the time. Further inquiry into this issue will assist the trier of fact's final resolution.

With regard to the final *Dairyland* factor, it appears from the record that Zaiya was partially financially independent. She paid rent to Rita when she lived in her home and sometimes purchased groceries for the home. Zaiya paid certain utility bills at Renee's home. However, Zaiya was also partially financially dependent on Renee. Renee leased a vehicle for Zaiya's sole use and paid for the mandatory no-fault insurance. Renee also provided Zaiya with a cellular telephone.

The record evidence in this case was not open and shut; it left open issues upon which reasonable minds certainly could differ. Accordingly, in Case A, the circuit court should not have disregarded the general rule that domicile is a question of fact by resolving the issue as a matter of law. We vacate the grant of summary disposition in Docket No. 350733 and remand for further proceedings.

Given our resolution in Docket No. 350733, we must further conclude that the circuit court erred in resolving Case B in part based on the resolution of the domicile dispute in Case A. We vacate that portion of the summary disposition order underlying Docket No. 353157 as well.

### III. INSURANCE COVERAGE

The final remaining question on appeal is whether the circuit court properly determined in Docket No. 353157 that Zaiya was not an "insured" under the Encompass policy issued to Renee. It is undisputed that at the time of the accident, Zaiya was driving a vehicle leased in Renee's name. Renee also secured the no-fault policy for the vehicle under her own name. Both Zaiya and Renee described that Encompass was on notice that Zaiya was the sole driver of that vehicle, however. The circuit court concluded that Renee was the only named insured and that Zaiya was simply a "rated driver."

We review de novo a lower court's interpretation and application of an insurance policy. *Twichel v MIC Gen Ins Corp*, 469 Mich 524, 533; 676 NW2d 616 (2004). As with any other contract, the plain and unambiguous language of the contract controls. See *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

The Encompass policy lists Renee Yacoub as the policyholder. In the description of the vehicles covered by the policy, Renee is identified as the "rated driver" of one vehicle and Zaiya as the "rated driver" of a second. Zaiya's name is also listed in a section entitled "driver information." Under the PIP coverage section of the insurance policy, Encompass defines a "covered person" as including "[y]ou or any family member insured in an auto accident," or "[a]nyone else injured in an auto accident . . . [w]hile occupying your covered auto." The policy continues that Encompass "will pay [PIP] benefits to or for a covered person" who is injured as provided under the no-fault act.

MCL 300.3114 similarly provides for PIP coverage as follows:

> (1) Except as provided in subsections (2), (3), and (5), a [PIP] policy described in section 3101(1) applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident.

-6-

* * *

(4) Except as provided in subsections (1) to (3), a person suffering accidental bodily injury arising from a motor vehicle accident while an occupant of a motor vehicle shall claim [PIP] benefits from insurers in the following order of priority:

(a) The insurer of the owner or registrant of the vehicle occupied.

(b) The insurer of the operator of the vehicle occupied.

"[T]he 'person named in the policy' under MCL 500.3114(1) is synonymous with the 'named insured.' " *Stone v Auto-Owners Ins Co*, 307 Mich App 169, 175; 858 NW2d 765 (2014). Those "persons designated merely as drivers under a policy . . . are neither named insureds nor persons named in the policy." *Id*. Zaiya is not a named insured; she is "designated merely as [a] driver[]" under the Encompass policy. As Zaiya is not the named person under the Encompass policy, she is only entitled to coverage for this accident if she was domiciled with the policyholder at the time of the accident. MCL 500.3114(1).

However, Zaiya urges that she is entitled to benefits from Encompass under MCL 500.3114(4). "MCL 500.3114(4) applies when the injured person is not covered by his or her own insurance or the insurance of a relative domiciled in the same household under MCL 500.3114(1) and permits the injured person to seek benefits from the no-fault insurers of others, including the vehicle's owner, registrant, or operator." *Stone*, 307 Mich App at 176. This Court has held that "even if the owner, registrant, or operator of a vehicle is not a named insured under a policy, the named insured's insurer may also constitute an 'insurer' of the owner, registrant, or operator under MCL 500.3114(4) if the policy expands the definition of 'insured person' beyond the named insured so that it includes those persons." *Id*. at 176-177. This Court has defined "insurer" as "one who agrees, by contract, to assume the risk of another's loss and to compensate for that loss." *Id*. at 177 (quotation marks omitted).

MCL 500.3114(4) is not triggered in this case because although Zaiya was not a named insured, she fell within another category listed in subsection (1)—she is domiciled with relatives (although it is still unclear with which relatives she was domiciled at the time of her accident). The insurer of Zaiya's domiciliary will have top priority in this coverage dispute. Accordingly, we affirm that portion of the summary disposition order denying coverage as a named insured under the Encompass policy.

In Docket No. 350733, we vacate and remand for further proceedings consistent with this opinion. In Docket No. 353157, we vacate in part and affirm in part. On remand, the circuit court should consolidate these suits for swifter resolution. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Deborah A. Servitto
/s/ Elizabeth L. Gleicher