*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JANET L. HETZEL, as Legal Guardian of LIANA
RIANE FOUTZ, a Legally Incapacitated Individual,

UNPUBLISHED
February 29, 2024

        Plaintiff-Appellee,

v

No. 365474
Wayne Circuit Court
LC No. 21-016075-NF

PROGRESSIVE MARATHON INSURANCE
COMPANY,

        Defendant-Appellant,

and

MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY, and UNNAMED
ASSIGNEE OF MAIPF,

        Defendants.

Before: FEENEY, P.J., and REDFORD and YATES, JJ.

PER CURIAM.

The complexity, confusion, and delay created by the Michigan no-fault act, MCL 500.3101 *et seq.*, are on display in this priority dispute over automobile insurance coverage. At issue is the "domicile" of Liana Riane Foutz, who suffered serious injuries while she was riding in a vehicle in Kentucky on November 20, 2020. Defendant, Progressive Marathon Insurance Company, has appealed, by leave granted,[1] a trial-court order denying its motion for summary disposition under MCR 2.116(C)(10) and awarding summary disposition to plaintiff under MCR 2.116(I)(2). On appeal, defendant contends that the trial court erred in denying its motion for summary disposition because Foutz was domiciled in Kentucky at the time of the accident. We agree that the trial court

---

[1] *Hetzel v Progressive Marathon Ins Co*, unpublished order of the Court of Appeals, entered August 28, 2023 (Docket No. 365474).

erred in awarding summary disposition to plaintiff, but we disagree that the trial court erred when it denied defendant's motion for summary disposition. Thus, we vacate the trial court's award of summary disposition to plaintiff, but we affirm the trial court's denial of summary disposition to defendant because a genuine issue of material fact remains as to Foutz's domicile.

## I. FACTUAL BACKGROUND

This case arose out of a single-car accident in which Foutz was a passenger. Four months before the accident, Foutz moved from her home in Michigan to Kentucky at the age of 17. Prior to her move, Foutz had been staying with her mother, Janet Hetzel, who lived in Michigan and had a no-fault automobile insurance policy from defendant. Foutz moved to Kentucky to live with 20-year-old Mary Cole, whom Foutz met on a dating website. Foutz moved into an apartment with Cole and started working at a fast-food restaurant. Foutz used some of the money that she earned at that job to pay expenses related to the apartment. After Foutz turned 18 in October 2020, she opened a bank account in Kentucky and obtained a Kentucky state identification card.

In November 2020, mere days before the accident, Foutz applied for her own apartment in the same apartment complex where she had been living with Cole. At that same time, Foutz and Cole had a falling out. Foutz testified that she lived in Cole's apartment the entire time she was in Kentucky, but Hetzel was under the impression that Foutz had left Cole's apartment at some point before the accident and was living with someone else in a different unit at the apartment complex.

On November 20, 2020, Foutz was involved in a motor vehicle accident in Kentucky. The driver was killed, and Foutz suffered severe head injuries. Foutz was in the hospital for nearly two months after the accident, and then she returned to Michigan in mid-January 2021, staying briefly with her mother, Hetzel, before moving in with her siblings.

After the accident, Hetzel sought personal protection insurance (PIP)[2] benefits for Foutz's injuries under Hetzel's automobile insurance policy with defendant, but defendant refused to pay benefits for Foutz's injuries, so plaintiff filed a complaint seeking payment of those PIP benefits. Plaintiff asserted that Foutz was entitled to PIP benefits because she was covered by Hetzel's no-fault insurance policy through defendant, as a "resident relative" of Hetzel. In response, defendant argued that Foutz was not a named insured on the policy and was not a "resident relative" of Hetzel, the named insured, so defendant was not in the order of priority for paying PIP benefits.

Defendant sought summary disposition under MCR 2.116(C)(10), claiming Foutz was not entitled to PIP benefits from defendant because she was not a "resident relative" of Hetzel at the time of the accident. Defendant asserted that Foutz was domiciled in Kentucky at the time of the accident. In response, plaintiff insisted that Foutz's domicile at the time of the accident remained Hetzel's residence and asked the trial court to deny defendant's motion for summary disposition,

---

[2] Use of the acronym "PIP" may seem strange to an uninitiated reader because that acronym cannot be readily derived from "personal protection insurance." But as our Supreme Court has explained, "[p]ersonal protection insurance benefits are abbreviated PIP by convention, with the abbreviation PPI being used for property protection insurance benefits." *McKelvie v Auto Club Ins Ass'n*, 459 Mich 42, 44 n 1; 586 NW2d 395 (1998). PIP benefits are also known as "first-party" benefits.

enter an order declaring that Foutz was domiciled with Hetzel on November 20, 2020, and grant summary disposition in Foutz's favor under MCR 2.116(I)(2). The trial court agreed with plaintiff that Foutz had not established a new domicile by the time of the accident, so her domicile remained Hetzel's residence when the accident occurred. The trial court entered an order on March 9, 2023, denying summary disposition to defendant and awarding summary disposition to plaintiff pursuant to MCR 2.116(I)(2) because Foutz was "domiciled" with Hetzel at the time of the accident. This appeal followed.

## II. LEGAL ANALYSIS

Defendant argues that the trial court erred in ruling that Foutz was not domiciled at Cole's Kentucky apartment at the time of the accident. Defendant also asserts that the trial court erred by considering factors that were irrelevant to domicile and that were not enumerated in *Workman v Detroit Auto Inter-Ins Exch*, 404 Mich 477, 496-497; 274 NW2d 373 (1979), or *Dairyland Ins Co v Auto Owners Ins Co*, 123 Mich App 675, 682; 333 NW2d 322 (1983). Consequently, defendant claims the trial court erred in denying its motion for summary disposition under MCR 2.116(C)(10) and awarding plaintiff summary disposition under MCR 2.116(I)(2).[3] "We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Pursuant to MCR 2.116(C)(10), summary disposition should be granted when "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A genuine issue of material fact exists "when the record leaves open an issue upon which reasonable minds might differ." *El-Khalil*, 504 Mich at 160 (quotation marks and citation omitted).

Under the no-fault act, a person who suffers an injury as a result of a vehicle accident "must look first to his or her own no-fault policy or to a no-fault policy issued to a relative with whom he or she is domiciled." *W A Foote Mem Hosp v Mich Assigned Claims Plan*, 321 Mich App 159, 169; 909 NW2d 38 (2017). Pursuant to MCL 500.3114(1), PIP benefits are generally available to "the person named in the policy, the person's spouse, and a relative of either domiciled in the same household[.]" The no-fault act does not define the term "domicile," but as our Supreme Court has stated, "a person's domicile has been defined to be 'that place where a person has voluntarily fixed [her] abode not for a mere special or temporary purpose, but with a present intention of making it [her] home, either permanently or for an indefinite or unlimited length of time.' " *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 493; 835 NW2d 363 (2013). Therefore, a person's "domicile" refers to " 'the place where a person has [her] true, fixed, permanent home . . . to which, whenever [she] is absent, [she] has the intention of returning.' " *Id*.

Every person must have a "domicile somewhere," and "no person can have more than one such domicile, at one and the same time." *Id*. at 493-494 (quotation marks and citations omitted). Consequently, a person "retains [her] domicile of origin upon [her] birth until [she] changes it, by acquiring another; and so each successive domicile continues, until changed by acquiring another." *Id*. at 494 (quotation marks, brackets, and citation omitted). Therefore, "the acquisition of a new domicile does, at the same instant, terminate the preceding one." *Id*. (quotation marks and citation

---

[3] Under MCR 2.116(I)(2): "If it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party."

omitted). "A domicile determination is generally a question of fact[,]" *id*. at 490, but "where the underlying material facts are not in dispute, the determination of domicile is a question of law for the circuit court." *Id*.

Here, the trial court appropriately focused on the domicile of Foutz on November 20, 2020, when she was badly injured in the motor vehicle accident. The trial court had to consider whether Foutz remained domiciled "in the same household" as her mother, Hetzel, at that time, or whether Foutz had changed her domicile to an apartment in Kentucky before the accident. In interpreting the phrase "domiciled in the same household" set forth in MCL 500.3114(1), our Supreme Court "articulated a flexible multi-factor test to aid courts in determining domicile, in which no one factor is determinative." *Grange*, 494 Mich at 497. And in *Workman*, 404 Mich at 496-497, our Supreme Court identified several factors it considered to be "[a]mong the relevant factors" in this analysis, including:

> (1) the subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the place [she] contends is [her] "domicile" or "household"; (2) the formality or informality of the relationship between the person and the members of the household; (3) whether the place where the person lives is in the same house, within the same curtilage or upon the same premises; (4) the existence of another place of lodging by the person alleging "residence" or "domicile" in the household[.] [Citations omitted.]

In *Dairyland*, this Court addressed the "domicile" of "young people departing from the parents' home and establishing new domiciles as part of the normal transition to adulthood and independence." 123 Mich App at 681. This Court ruled, in that situation, "[o]ther relevant indicia of domicile include such factors as whether the claimant continues to use his parents' home as his mailing address, whether he maintains some possessions with his parents, whether he uses his parents' address on his driver's license or other documents, whether a room is maintained for the claimant at the parents' home, and whether the claimant is dependent upon the parents for support." *Id*. at 682. This Court explained that "[a]ll relevant factors must be considered in ascertaining domicile." *Id*. at 681.

Those factors are instructive in determining the domicile of adults, including young adults, but our Supreme Court has explained that "an unemancipated child, unlike a competent adult, lacks the legal capacity to make legally binding determinations for him or herself and, therefore, a child lacks the *capacity* to acquire a domicile of choice." *Grange*, 494 Mich at 503. "Thus, while intent is critical for determining the domicile of an adult, a child's intent regarding domicile is simply irrelevant, and the traditional factors applied in determining an adult's domicile are likewise irrelevant." *Id*. "Instead, the child's domicile is determined by reference to the domicile of his or her parents." *Id*. "The child's domicile of origin remains the child's domicile until a new domicile is acquired through the actions of the child's parents or until that point in time when the minor, either through emancipation or by reaching the age of majority, can acquire a domicile of choice." *Id*.

Here, the trial court determined that the relevant factors "favor that Foutz was domiciled, at the time of the motor vehicle accident, with her mother and had not established a new domicile." Accordingly, the trial court concluded that, under the no-fault act, Foutz was "a relative domiciled

-4-

with her mother," and so Foutz was covered by her mother's insurance policy issued by defendant. But defendant contends that the trial court erred by considering factors other than those set forth in *Workman* and *Dairyland*, by not considering some of the factors identified in those cases, and by considering Foutz's conduct after the accident, which defendant deemed to be irrelevant to this analysis.

Although *Workman* and *Dairyland* offered a list of factors that can be considered, none of those factors is dispositive, *Workman*, 404 Mich at 496-497, *Dairyland*, 123 Mich App at 682, and "[a]ll relevant factors must be considered . . . ." *Dairyland*, 123 Mich App at 681. Additionally, nothing in *Workman* or *Dairyland* suggests that the factors identified in those opinions constitute an exclusive list of factors that can be considered. In fact, the language in those opinions suggests that the listed factors are just some of the considerations that may bear upon a trial court's analysis. *Workman*, 404 Mich at 496 (introducing the factors by stating "[a]mong the relevant factors are the following . . ."); *Dairyland*, 123 Mich App at 682 (introducing the factors by stating "[o]ther relevant indicia of domicile include such factors as . . ."). Beyond that, nothing in either of those cases suggests that the trial court must consider all of the listed factors. In light of that guidance, defendant's argument that the trial court erred by considering factors outside of those specifically listed in *Workman* and *Dairyland*, or by not considering factors from those cases, is unpersuasive. Also, domicile is a question of intent. See *Grange*, 494 Mich at 495. Consequently, the trial court did not err in considering the fact that Foutz chose to return to Hetzel's home after the accident as a relevant factor in divining Foutz's intent on the day of the accident.

Defendant further argues that the trial court erred in determining that Foutz was domiciled at Hetzel's house, and not at Cole's apartment. Without question, Foutz was domiciled at Hetzel's residence before Foutz moved to Kentucky in July 2020, so the issue is whether Foutz acquired a new domicile in the four months between her July 2020 move and the accident in November 2020. Because a minor cannot unilaterally change domicile, *Grange*, 494 Mich at 503, Foutz's domicile necessarily remained Hetzel's residence until Foutz turned 18 in October 2020. Thus, any change in Foutz's domicile must be based on events that occurred after Foutz's 18th birthday.

When addressing the *Workman* factors, first, there was no evidence Foutz had declared her intent with respect to her living arrangement. See 404 Mich at 496. Whether Foutz exhibited the subjective intent to remain at Cole's apartment indefinitely after Foutz turned 18 is unsettled, with some evidence against, and other evidence in support of, that proposition. After her 18th birthday, Foutz opened a bank account in Kentucky and acquired a Kentucky state identification card listing her address as Cole's apartment. Those actions suggest a subjective intent to remain in Kentucky, and specifically to continue living in Cole's apartment. But her actions must be considered in light of Foutz's testimony that she did those things at Cole's behest. To the extent that Foutz undertook those actions at Cole's request, and not because she felt those actions were necessary to further her intent to remain in Kentucky at Cole's apartment for an indefinite period of time, the evidentiary significance of those acts is diminished. The evidence surrounding Foutz's subjective intent does not reflect a situation where there is no genuine issue of material fact, especially when the evidence is viewed in the light most favorable to the non-moving party. See *El-Khalil*, 504 Mich at 160.

Turning to the second *Workman* factor, the formality of the relationship between Foutz and Cole (as well as the other people residing in Cole's apartment) is questionable at best, and certainly less formal than the relationships between Foutz and her mother and other family members. See

-5-

*Workman*, 404 Mich at 496. Conversely, the fourth *Workman* factor, i.e., "the existence of another place of lodging by the person alleging 'residence' or 'domicile' in the household," see *id*. at 497, weighs in favor of defendant's argument because Foutz had a place of lodging aside from Hetzel's residence. In sum, the *Workman* factors give rise to genuine issues of material fact, as reasonable minds could differ as to the conclusions to be drawn from the evidence.

Consideration of the *Dairyland* factors brings little clarity to the dispute about the domicile of Foutz. The first *Dairyland* factor focuses on whether Foutz continued to use Hetzel's home as her mailing address. *Dairyland*, 123 Mich App at 681. The record contains no evidence that Foutz changed her address after she left Hetzel's house. But Foutz did list Cole's apartment address on the Kentucky state identification card she obtained after she turned 18, which means that the third *Dairyland* factor favors defendant's position. See *id*. In contrast, applying the second *Dairyland* factor, the evidence suggests that Foutz kept some possessions at Hetzel's house. See *id*. Finally, consideration of the fourth and fifth *Dairyland* factors yields conflicting results. Although a room was maintained for Foutz at Hetzel's home, there was no evidence that Foutz was dependent upon Hetzel for support. See *id*.

As our analysis reveals, significant evidence supports each party's position. Thus, on this record, there remains a genuine issue of material fact as to whether Foutz's domicile changed from Hetzel's home to Cole's apartment. If Foutz's domicile changed after she turned 18, then Cole's apartment would have remained Foutz's domicile until she acquired a new domicile. See *Grange*, 494 Mich at 494. But because reasonable minds could differ on the conclusions to be drawn from the evidence, a genuine issue of material fact exists, which renders summary disposition for either side inappropriate. See MCR 2.116(C)(10). This is especially true when the evidence is reviewed in a light most favorable to the non-moving party and all reasonable inferences are drawn in favor of the non-moving party. Accordingly, neither side is entitled to summary disposition under MCR 2.116(C)(10) or MCR 2.116(I)(2). Hence, we affirm the trial court's denial of defendant's request for summary disposition pursuant to MCR 2.116(C)(10), vacate the award of summary disposition to plaintiff under MCR 2.116(I)(2), and remand the case for additional proceedings consistent with this opinion.

Affirmed in part, vacated in part, and remanded for further consideration consistent with this opinion. We do not retain jurisdiction.

/s/ Kathleen A. Feeney
/s/ James Robert Redford
/s/ Christopher P. Yates